People v Sutton (2018 NY Slip Op 08698)





People v Sutton


2018 NY Slip Op 08698


Decided on December 19, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 19, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
CHERYL E. CHAMBERS
COLLEEN D. DUFFY
ANGELA G. IANNACCI, JJ.


2016-08675
 (Ind. No. 854-15)

[*1]The People of the State of New York, respondent,
v
Charles E. Sutton, appellant.


Laurette D. Mulry, Riverhead, NY (Edward E. Smith of counsel), for appellant.
Timothy D. Sini, District Attorney, Riverhead, NY (Marion Tang of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the County Court, Suffolk County (Timothy P. Mazzei, J.), rendered June 30, 2016, convicting him of criminal possession of a weapon in the second degree, criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree, and criminal possession of a controlled substance in the seventh degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.
ORDERED that the judgment is modified, on the law, by vacating the conviction of criminal possession of a controlled substance in the seventh degree, vacating the sentence imposed thereon, and dismissing that count of the indictment; as so modified, the judgment is affirmed.
The defendant was apprehended after a police officer witnessed him engage in what appeared to the officer to be a drug deal. As police officers were arresting the defendant, they found envelopes containing heroin in the defendant's right hand and a gun in his vehicle. After a hearing, the hearing court denied that branch of the defendant's omnibus motion which was to suppress physical evidence. Following a jury trial, the defendant was convicted of various weapon possession and drug-related counts.
A forcible stop of a suspect is permissible where police officers have a reasonable suspicion that he or she has committed, is committing, or is about to commit a crime (see People v De Bour, 40 NY2d 210, 223; People v Cespedes, 120 AD3d 585, 586), and a determination of the propriety of such action requires an evaluation of the totality of the circumstances (see People v Cespedes, 120 AD3d at 586; People v Williams, 69 AD3d 663, 664). Here, we accord due deference to the hearing court's credibility determinations (see People v Mateo, 2 NY3d 383, 414; People v Green, 100 AD3d 654, 654-655; People v Blinker, 80 AD3d 619, 620).
As is relevant to this appeal, at a Dunaway hearing (see Dunaway v New York, 442 US 200), Police Officer Rossler testified that he had been a police officer with the Suffolk County Police Department (hereinafter the Police Department) for 11 years and, at the time of the events at issue, had been working with the Police Department's burglary/larceny task force. Officer Rossler testified that, during his time on the task force, he observed a connection between burglaries and [*2]drugs. He noted that stolen items were often pawned, and the individuals who received cash from the pawn shops would then go to buy drugs. Officer Rossler testified that, on the night at issue, he and three other police officers were surveilling a vehicle they had followed from a pawn shop where the two occupants of the vehicle had pawned something. All of the officers were in separate unmarked police cars. Officer Rossler testified that he observed the surveilled vehicle park in a Pep Boys parking lot away from the store, that he was in a car that was parked in the row directly behind the surveilled vehicle, and that the parking lot had sufficient lighting throughout.
Officer Rossler further testified that, after approximately 30 or 40 minutes had elapsed, the defendant drove up in a vehicle and pulled up next to the passenger side of the surveilled vehicle. Officer Rossler testified that he had a clear view of the space between the defendant's vehicle and the other vehicle. He testified that he saw the passenger side window of the surveilled vehicle and driver side window of the defendant's vehicle each open. He observed the passenger of the surveilled vehicle and the defendant exchange some words, and then the passenger handed the defendant some money. Officer Rossler then observed the defendant hand the passenger a light- or yellow-colored packet. Officer Rossler testified that, based upon his experience and training, he concluded that he had observed a drug transaction, and he radioed his fellow officers informing them of what he had observed.
Police Officer Krolikiewicz, who also had been part of the team of officers that evening, testified at the hearing that, after Officer Rossler alerted him that a drug sale had taken place, he drove toward the defendant's car. Officer Krolikiewicz testified that when he exited his vehicle and approached the defendant's car, he observed the defendant holding money in his left hand. In his right hand, the defendant had envelopes, which, based on Officer Krolikiewicz's training and experience, were consistent with heroin packaging.
The officers' training and experience, together with the officers' observations of the individuals who took items to the pawn dealer and then met the defendant in the parking lot and Officer Rossler's observation of the passing of money to the defendant in exchange for an object, provided reasonable suspicion that the defendant had engaged in illegal drug activity (see People v Cespedes, 120 AD3d at 586; People v Smalls, 111 AD3d 582, 583).
Viewing the evidence introduced at trial in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt of criminal possession of a weapon in the second degree, criminal sale of a controlled substance in the third degree, and criminal possession of a controlled substance in the third degree beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d at 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt as to criminal possession of a weapon in the second degree, criminal sale of a controlled substance in the third degree, and criminal possession of a controlled substance in the third degree was not against the weight of the evidence (see People v Romero, 7 NY3d 633, 646). 
Although the defendant contends on appeal that he was denied his right to a public trial when the trial court excluded two people whom he claimed were his family members from the courtroom during the testimony of an undercover police detective (see US Const, 6th Amend; Civil Rights Law § 12; Judiciary Law § 4; People v Jones, 47 NY2d 409, 414), the defendant's objection before the court conducted a Hinton hearing (see People v Hinton, 31 NY2d 71) was limited to the closing of the courtroom to the general public. Prior to conducting the hearing, the court determined that the two individuals who were present in the courtroom were the defendant's relatives and directed them to leave the courtroom during the hearing. At the end of the hearing, the court ascertained that the People had established that the safety of the undercover detective required that the courtroom be closed to the general public during the testimony of the undercover detective. When the court inquired as to whether counsel wanted to be heard with respect to its determination, counsel for the defendant merely reiterated that he would rely on his prior legal arguments as to the constitutionality of closing the courtroom to the public. At no time did the defendant identify the [*3]excluded individuals or assert that the two individuals should remain in the courtroom during the detective's trial testimony because of a familial connection to the defendant (see People v Nazario, 4 NY3d 70, 74). In the absence of a specific objection by defense counsel as to the propriety of closing the courtroom to identified family members, as opposed to the general public, we conclude that, under the circumstances of this case, the defendant's contentions on appeal are unpreserved for appellate review (see CPL 470.05[2]; People v Legere, 81 AD3d 746, 751; People v Diaz, 265 AD2d 489, 489; see also People v Tolentino, 90 NY2d 867, 870). We decline to review the contentions in the exercise of our interest of justice jurisdiction.
As the People correctly concede, the defendant's conviction of criminal possession of a controlled substance in the seventh degree must be vacated and that count of the indictment dismissed, as it is a lesser included count of criminal possession of a controlled substance in the third degree (see CPL 300.40[3][b]; People v Anderson, 91 AD3d 789, 790; see also Penal Law §§ 220.03, 220.16[1]).
The sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
The defendant's remaining contention is without merit.
RIVERA, J.P., CHAMBERS, DUFFY and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court